UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: EX PARTE APPLICATION
VARIAN MEDICAL SYSTEMS
INTERNATIONAL AG,

Applicant.

Case No.  16-mc-80048-MEJ

**ORDER GRANTING *EX PARTE*
APPLICATION UNDER 28 U.S.C. § 1782
FOR DISCOVERY FOR USE IN A
FOREIGN PROCEEDING**

Re: Dkt. No. 1

## INTRODUCTION

Varian Medical Systems International AG ("Varian") filed this *ex parte* Application for an order pursuant to 28 U.S.C. § 1782 for discovery from a local corporation, IMPAC Medical Systems, Inc. ("IMPAC"), for its use in a foreign proceeding.  Appl., Dkt. No. 1.  Having considered Varian's arguments, supporting evidence, and the relevant legal authority, the Court **GRANTS** Varian's Application for the reasons set forth below.

## BACKGROUND

Varian filed a patent infringement action in the District Court in Mannheim, Germany against Elekta AB, Elekta GmbH, and Elekta Ltd. (collectively "Elekta").  Appl. at 1-2; Declaration of Yury Kapgan ("Kapgan Decl.") ¶¶ 3-4, Dkt. No. 2.  The German proceedings concern, at least in part, the design and operation of Elekta's treatment planning software known as "Monaco," which allows medical professionals to develop and optimize cancer treatment plans. Kapgan Decl. ¶ 5; Appl. at 2.  Elekta sells Monaco in Germany and, as alleged by Varian, has infringed on Varian's European patents through such sales.  Kapgan Decl. ¶ 6.

IMPAC—a wholly-owned subsidiary of Elekta Holdings U.S., which in turn is a wholly-owned subsidiary of Elekta AB—is the entity responsible for developing and manufacturing Monaco software.  *Id.* ¶¶ 7, 8.  IMPAC's principal place of business is in Sunnyvale, California.

United States District Court
Northern District of California

1   *Id.* ¶ 7; Ex. 1 (print outs from Elekta's website, https://www.elekta.com/company/#our-offices).

2          Varian seeks copies of IMPAC's requirement specifications and design specifications for

3   Monaco, versions 2.0 and later, which it states are a "subset of technical documents describing

4   Elekta's software functionality). Appl. at 1. According to Varian, this information is directly

5   relevant to disputed issues in the foreign proceeding, is in the possession of IMPAC in this

6   District, and cannot be obtained in the German action. *Id.*; Kapgan Decl. ¶ 8. Varian explains that

7   in the German proceeding Elekta contends Varian's allegations are based on a description of the

8   Monaco software that "is imprecise and mixes up different definitions as all as the two stages of

9   the optimization process at issue[.]" Appl. at 2 (quoting *In re: Varian Med. Sys. Int'l AG v. Elekta*

10  *AB, et al., 70 195/15, Elekta's Statement of Defence* (translation) at 18-19, Feb. 11, 2016).

11  Accordingly, Varian seeks the requirement and design specifications of Monaco that it contents

12  are "directly relevant to Elekta's contention that Varian has somehow mischaracterized the

13  relevant features of the Monaco software in that action." *Id.* Varian contends that "German courts

14  are receptive to the type of discovery sought by Varian" and its request "is not made to circumvent

15  any limitation on discovery imposed by German courts." *Id.* at 3.

16         Varian submits a copy of its proposed subpoena as Exhibit B to the Application. *See id.*,

17  Ex. B. The subpoena contains two Requests for Production:

18             **Request No. 1.**   All requirement specifications and design
               specification for the "Monaco" treatment planning software, version
19             2.0 and later.

20             **Request No. 2.**   All requirement specifications and design
               specifications that support Elekta AB, Elekta GmbH, and Elekta
21             Ltd.'s contention in the Statement of Defence that Varian has
               mischaracterized the relevant features of the Monaco software in *In*
22             *re: Varian Medical Systems International AG v. Elekta AB, et al., 70*
               *195/15.*
23

24  *Id.*

25                                    **LEGAL STANDARDS**

26  **A.     Discovery Pursuant to 28 U.S.C. § 1782**

27         "Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to

28  provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v.*

United States District Court
Northern District of California

2

1  *Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).  Section 1782 provides in part:

> 2  The district court of the district in which a person resides or is found
> 3  may order him to give his testimony or statement or to produce a
>    document or other thing for use in a proceeding in a foreign or
> 4  international tribunal. . . .   The order may be made . . . upon the
>    application of any interested person and may direct that the
>    testimony or statement may be given, or the document or other thing
> 5  be produced, before a person appointed by the court.

6  28 U.S.C. § 1782(a).  The statute thus outlines a three part test in deciding whether to grant a §

7  1782 application: "(1) the discovery sought is from a person residing in the district court to which

8  the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and

9  (3) the applicant is a foreign or international tribunal or an 'interested person.'"  *In re Ex Parte*

10  *Apple Inc.*, 2012 WL 1570043, at *1 (N.D. Cal. May 2, 2012) (quotation omitted).  As soon as the

11  three statutory requirements have been met, "a district court is free to grant discovery in its

12  discretion."  *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83-84 (2d Cir. 2004)

13  (quotation omitted).

14  But "[a] district court is not required to grant the application" and "instead retains

15  discretion to determine what discovery, if any, should be permitted."  *Cryolife, Inc. v. Tenaxis,*

16  *Inc.*, 2009 WL 88348, at *1 (N.D. Cal. Jan. 13, 2009) (citing *Intel Corp.*, 542 U.S. at 264).  The

17  Supreme Court provided several non-exclusive factors (the "*Intel* factors") for district courts to

18  consider in exercising their discretion:

> 19  (1) whether the "person from whom discovery is sought is a
> 20  participant in the foreign proceeding"; (2) "the nature of the foreign
>    tribunal, the character of the proceedings underway abroad, and the
> 21  receptivity of the foreign government, or the court or agency abroad
>    to U.S. federal-court judicial assistance"; (3) whether the discovery
> 22  request is an "attempt to circumvent proof-gathering restrictions or
>    other policies of a foreign country or the United States"; and (4)
>    whether the discovery is "unduly intrusive or burdensome."
> 23

24  *In re Apple Inc.*, 2012 WL 1570043, at *1 (quoting *Intel Corp.*, 542 U.S. at 264-65).  District

25  courts utilize their discretion keeping in mind the "twin aims" of § 1782: "'providing efficient

26  assistance to participants in international litigation and encouraging foreign countries by example

27  to provide similar assistance to our courts.'"  *Intel Corp.*, 542 U.S. at 252 (quotation omitted).

28  //

United States District Court
Northern District of California

3

**B.    *Ex Parte* Filing of Application**

In general, *ex parte* requests are disfavored and mostly limited to emergency situations because such requests disrupt and undermine the adversarial system on which the Court generally operates.  *In re Judicial Assistance Pursuant to U.S.C. Sec. 1782 ex rel. Macquarie Bank Ltd. (Macquarie Bank I)*, 2014 WL 7706908, at *1 (D. Nev. June 4, 2014); *In re Intermagnetics Am., Inc.*, 101 B.R. 191, 192-93 (C.D. Cal. 1989).  Nonetheless, § 1782 petitions are regularly reviewed on an *ex parte* basis.  *See Macquarie Bank I*, 2014 WL 7706908, at *1; *In re Republic of Ecuador*, 2010 WL 3702427, *2 (N.D. Cal. Sept. 15, 2010).  Consequently, orders granting § 1782 applications typically only provide that discovery is "authorized," and thus the opposing party may still raise objections and exercise its due process rights by challenging the discovery after it is issued via a motion to quash, which mitigates concerns regarding any unfairness of granting the application *ex parte*.  *See Macquarie Bank I*, 2014 WL 7706908, at *1 (citing *In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976)); *IPCom GMBH & Co. KG v. Apple Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014) ("It is common for parties to file *ex parte* applications, as parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it." (footnote and quotation omitted)).

**DISCUSSION**

In determining whether to grant Varian's Application, the Court considers first, the three part test under § 1782, and second, the four *Intel* factors.

**A.    28 U.S.C. § 1782's Three Threshold Requirements**

Varian meets § 1782's threshold three part test.  First, "the discovery sought is from a person residing in the district court to which the application is made" because Varian seeks discovery from IMPAC, which is principally located in Sunnyvale, California within this Court's jurisdiction in the Northern District of California.  Second, "the discovery is for use in a proceeding before a foreign tribunal" because Varian seeks to use the discovery it seeks from IMPAC to support its patent claims in *In re: Varian Medical Systems International AG v. Elekta AB, et al., 70 195/15*, which is before the Mannheim District Court in Germany.  Third, and

4

1    finally, Varian qualifies as an "interested person" because it is a participant in the foreign

2    proceeding. *See Intel Corp.*, 542 U.S. at 256.  Accordingly, Varian successfully meets the

3    statutory requirements of § 1782's three part test.

**B.    *Intel* Factors**

5    Even after finding that § 1782's three part test has been met, the Court nonetheless retains

6    discretion to decide what discovery, if any, should be permitted.  The four *Intel* factors assist the

7    Court in making this determination.

1.    Whether the Material is Within the Foreign Tribunal's Jurisdictional Reach

9    The first *Intel* factor is whether "the person from whom discovery is sought is a participant

10   in the foreign proceeding[,]" because "the need for § 1782(a) aid generally is not as apparent as it

11   ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Id.* at

12   264.  This is because "[a] foreign tribunal has jurisdiction over those appearing before it, and can

13   itself order them to produce evidence[,]" where "[i]n contrast, nonparticipants . . . may be outside

14   the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States,

15   may be unobtainable absent § 1782(a) aid." *Id.*

16   One court has recently recognized that "[a]lthough the case law at times refers to whether

17   the 'person' is within the foreign tribunal's jurisdictional reach, the key issue is whether the

18   material is obtainable through the foreign proceeding." *In re Judicial Assistance Pursuant to 28*

19   *U.S.C. 1782 by Macquarie Bank Ltd. (Macquarie Bank II)*, 2015 WL 3439103, at *6 (D. Nev.

20   May 28, 2015), *reconsideration denied sub nom. Matter of A Petition for Judicial Assistance*

21   *Pursuant to 28 U.S.C. § 1782 by Macquarie Bank Ltd.*, 2015 WL 7258483 (D. Nev. Nov. 17,

22   2015) (citing *In re Appl. of Ooo Promnefstroy*, 2009 WL 3335608, *5 (S.D.N.Y. Oct. 15, 2009)

23   ("it is the foreign tribunal's ability to control the evidence and order production, not the nominal

24   target of the § 1782 application, on which the district court should focus"); *In re Microsoft Corp.*,

25   428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006) ("The relevant inquiry is whether the evidence is

26   available to the foreign tribunal"); *In re Ex Parte LG Elecs. Deutschland GmbH*, 2012 WL

27   1836283, *2 (S.D. Cal. May 21, 2012) (finding this factor weighed against allowing § 1782

28   discovery even though subpoena was directed to a non-party to the foreign proceeding because the

United States District Court
Northern District of California

1  information sought could be obtained from a party to the foreign proceeding)); *see also In re Ex*

2  *Parte Appl. of Qualcomm Inc. (Qualcomm)*, 2016 WL 641700, at *7 (N.D. Cal. Feb. 18, 2016)

3  (indicating courts should properly "focus on whether the evidence 'is available to the foreign

4  tribunal,' because in some circumstances, evidence may be available to a foreign tribunal even if it

5  is held by a non-participant to the tribunal's proceedings.").

6        Consequently, the first *Intel* factor "militates against allowing § 1782 discovery when the

7  petitioner effectively seeks discovery from a participant in the foreign tribunal even though it is

8  seeking discovery from a related, but technically distinct entity."  *Id.* (citing *Schmitz v. Bernstein*

9  *Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 85 (2d Cir. 2004) ("Although technically the respondent

10  in the district was [the foreign counter-party's law firm], for all intents and purposes petitioners

11  are seeking discovery from DT, their opponent in the German litigation"); *In re Kreke Immobilien*

12  *KG*, 2013 WL 5966916, *5 (S.D.N.Y. Nov. 8, 2013) (denying discovery sought from parent

13  company under § 1782 when subsidiary company was participant in foreign proceeding because,

14  *inter alia*, "the notion that [the parent company] could somehow be a nonparticipant in the foreign

15  action is untenable")); *but see In re Appl. for an Order for Judicial Assistance in a Foreign*

16  *Proceeding in the Labor Court of Brazil*, 466 F. Supp. 2d 1020, 1031 (N.D. Ill. 2006) (finding first

17  *Intel* factor weighed in favor of granting § 1782 application when applicants sought discovery

18  from McDonald's but its wholly-owned subsidiary, McCal, was the party in the foreign

19  proceeding, noting, "McDonald's and McCal are two separate legal entities and McDonald's is

20  merely the shareholder of McCal."); *Norex Petroleum Ltd. v. Chubb Ins. Co. of Can.*, 384 F. Supp.

21  2d 45 (D.D.C. 2005) (holding that the court cannot require a wholly-owned American subsidiary

22  to force its foreign parent corporation to submit to discovery).

23        Thus while IMPAC is not itself a participant in the foreign proceeding at issue here, the

24  fact that its parent company, Elekta AB, is, suggests against finding that this factor weighs in favor

25  of granting the application.  Unlike the cases above where a subsidiary is asked to obtain

26  information from a parent company, if the German court were to order discovery from Elekta AB,

27  it would be the parent company asking for information from a subsidiary.  Under such

28  circumstances, the Court is inclined to agree with the *Macquarie Bank II* court that such a

United States District Court
Northern District of California

1  relationship tends to advise against § 1782 discovery.  Varian argues, however, that the "German

2  courts have very limited ability to order the production of documents[,]" and "German courts do

3  not allow for nearly the same type of discovery allowed for in the United States."  Appl. at 9

4  (citing *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011) (acknowledging

5  that a German litigant "cannot obtain even remotely comparable discovery by utilizing German

6  procedures"; additional citations omitted).  As it is unclear whether the Mannheim court can in

7  fact order the discovery Varian seeks, the Court is inclined to find that this first *Intel* factor is no

8  more than neutral.  *See Qualcomm*, 2016 WL 641700, at *7 (first *Intel* factor neutral when it was

9  unclear foreign tribunal could obtain discovery sought).

10          2.      The Foreign Tribunal

11          The second *Intel* factor asks courts to consider "the nature of the foreign tribunal, the

12  character of the proceedings underway abroad, and the receptivity of the foreign government or

13  the court or agency abroad to U.S. federal-court judicial assistance."  *Intel Corp.*, 542 U.S. at 264.

14  This factor focuses on whether the foreign tribunal is willing to consider the information sought.

15  *See Siemens A.G. v. W. Digital Corp.*, 2013 WL 5947973, *3 (C.D. Cal. Nov. 4, 2013) (citing

16  *Schmitz*, 376 F.3d at 884).  "[I]f there is reliable evidence that the foreign tribunal would not make

17  any use of the requested material, it may be irresponsible for the district court to order discovery,

18  especially where it involves substantial costs to the parties involved."  *In re Babcock Borsig AG*,

19  583 F. Supp. 2d 233, 241 (D. Mass. 2008).

20          There is no evidence or case law suggesting that the Mannheim District Court would be

21  unreceptive to the discovery Varian seeks.  *See Cryolife, Inc.*, 2009 WL 88348, at *3 (finding "no

22  basis to conclude that the German court would be unreceptive to the information requested");

23  *accord Heraeus Kulzer, GmbH*, 633 F.3d at 597 ("[T]here is nothing to suggest that the German

24  court would be affronted by [the applicant's] recourse to U.S. discovery or would refuse to admit

25  any evidence, or at least any probative evidence (German judges can disregard evidence that

26  would waste the court's time), that the discovery produced.").  "In the absence of authoritative

27  proof that a foreign tribunal would reject evidence obtained with the aid of section 1782," courts

28  tend to "err on the side of permitting discovery."  *In re Kreke Immobilien KG*, 2013 WL 5966916,

7

at *5 (quotation omitted); *cf. Schmitz*, 376 F.3d at 84 (denying discovery where "faced with specific requests from the German Ministry of Justice and the Bonn Prosecutor to deny petitioners the discovery they sought" because of concerns that granting discovery would jeopardize the ongoing German criminal investigation and "jeopardize German sovereign rights."). Accordingly, the Court finds this factor weighs in favor of § 1782 discovery.

### 3.    Attempt to Circumvent Foreign-Proof Gathering Restrictions and Policies

The third *Intel* factor asks whether the discovery request is an "attempt to circumvent proof-gathering restrictions or other policies of a foreign country or the United States." *Intel Corp.*, 542 U.S. at 264-65. "A perception that an applicant has 'side-stepped' less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013) (citing *In re Appl. of Caratube Int'l Oil Co.*, 730 F. Supp. 2d 101, 107-08 (D.D.C. 2010)). "Put differently, the § 1782 applicant's conduct in the foreign forum is not irrelevant." *In re Appl. of Gilead Pharmasset LLC*, 2015 WL 1903957, at *4 (D. Del. Apr. 14, 2015) (quoting *In re IPC Do Nordeste, LTDA*, 2012 WL 4448886, *9 (E.D. Mich. Sept. 25, 2012)).

This Court does not have any reason to believe that Varian's discovery request is an attempt to undermine the Mannheim District Court or its policies or proof-gathering restrictions. According to Varian, it is "unaware of any restrictions imposed by German courts in proof-gathering procedures that would prohibit it from obtaining and introducing the discovery it seeks through Section 1782[.]" Appl. at 7. Thus, while Varian provided little information about what efforts it has made to obtain the information it seeks through the Mannheim District Court, at this time, the Court finds this factor weighs in favor of granting Varian's application.

### 4.    Undue Intrusion or Burden

The final discretionary factor is whether the discovery requested is "unduly intrusive or burdensome." *Intel Corp.*, 542 U.S. at 265. The proper scope of discovery arising out of a § 1782 application is generally determined by the Federal Rules of Civil Procedure. *See, e.g.*, *Gov't of Ghana v. ProEnergy Servs., LLC*, 677 F.3d 340, 343 (8th Cir. 2012); *see also In re Letters Rogatory From Tokyo Dist. Prosecutor's Office*, 16 F.3d 1016, 1019 (9th Cir. 1994) (unless the

8

United States District Court
Northern District of California

1    court order otherwise specifies, the Federal Rules of Civil Procedure apply).  Following the

2    December 1, 2015 Amendments to the Federal Rules of Civil Procedure, requests must be

3    "proportional" "considering the importance of the issues at stake in the action, the amount in

4    controversy, the parties' relative access to relevant information, the parties' resources, the

5    importance of the discovery in resolving the issues, and whether the burden or expense of the

6    proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Typically, requests

7    become "unduly intrusive and burdensome where they are not narrowly tailored, request

8    confidential information and appear to be a broad 'fishing expedition' for irrelevant information."

9    *Qualcomm*, 2016 WL 641700, at *9.  The Supreme Court has recognized that "unduly intrusive or

10   burdensome requests may be rejected or trimmed."  *Intel*, 542 U.S. at 265.

11        Varian argues its request for the design specifications and requirement specifications of the

12   Monaco software versions 2.0 and later seeks highly relevant information and is narrowly tailored

13   and minimally burdensome to IMPAC.  Appl. at 5, 8-9.  It explains that in the foreign proceeding,

14   Elekta contends it does not infringe Varian's patents and that Varian's allegations are based on a

15   mischaracterization of the relevant features of the Monaco software.  *Id.* at 5.  As such, Varian

16   contends the discovery it seeks will support its infringement allegations and rebut Elekta's claims.

17   *Id.*  It further contends that "the universe of responsive documents is small and easily searchable,

18   and Elekta could produce these documents to Varian with minimal effort."  *Id.* at 8.

19        From Varian's proffers, the Court is satisfied that the information it seeks is relevant and

20   that its request—composed of two discrete Requests for Production for a limited number of

21   versions of the Monaco software—is narrowly tailored.  Although the data Varian seeks likely

22   contains Elekta/IMPAC's sensitive information, the Court does not have enough evidence at this

23   time to conclude that Varian's request is unduly intrusive.  If IMPAC seeks to challenge the

24   intrusiveness of this request—or for that matter the relevance, breadth, or burdensomeness of

25   Varian's request for documents—the Court's ruling does not preclude it from bringing a motion to

26   quash or modify the subpoena.  Additionally, the Court is willing to consider proposed protective

27   orders to prevent the misuse of this information.  In any event, under the current circumstances,

28   the Court finds this fourth *Intel* factor weighs in favor of Varian's request.

**CONCLUSION**

In light of the foregoing analysis, the Court finds that Varian meets § 1782's statutory requirements and concludes that the *Intel* factors generally weigh in favor of granting Varian's Application.  Accordingly, the Court exercises its discretion and **GRANTS** Varian's § 1782 Application.  Varian may serve the subpoena attached to its Application (Appl., Ex. B) without prejudice to any motion to quash that IMPAC or any other appropriate party may wish to file.

**IT IS SO ORDERED.**


Dated: March 24, 2016

_____

MARIA-ELENA JAMES
United States Magistrate Judge

United States District Court
Northern District of California

10